UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
NICOLE S. LATREILLE,

       Plaintiff,

  -against-

STEVE GROSS and DARCIE MILLER,                  Case No.15-cv-06388 CS

       Defendants.

-------------------------------------------------------------x

REPLY MEMORANDUM OF LAW
OF DEFENDANTS

-------------------------------------------------------------x


Hyun Chin Kim
Chief Assistant County Attorney/Litigation
Langdon C. Chapman
Orange County Attorney
15 Matthews Street, Suite 305
Goshen, New York  10924

**PRELIMINARY STATEMENT**

Defendants, Steve Gross and Darcie Miller, submit this memorandum of law in reply to Plaintiff's opposition to Defendants' motion for summary judgment.[1]

**STATEMENT OF FACTS**

The facts of this case were set forth in Defendants' previously submitted motion and accompanying affidavits.[2] Plaintiff's recitation of the facts is replete with inaccurate and misleading statements. The uncontested facts in the present matter establish that Plaintiff repeatedly violated confidentiality rules and regulations on which she was trained, improperly searching individuals in a confidential database, having no welfare program related purpose for doing so. Thereafter she disclosed confidential information obtained from her improper searches to the FBI. Despite her self-proclaimed discovery of mortgage fraud, the record evidence shows no such discovery. Defendants had a legitimate business related purpose for investigating and disciplining Plaintiff, charges to which Plaintiff admitted. There is no credible evidence in the record to establish retaliation or that Defendants acted with any impermissible motive such that summary judgment is appropriate in this matter.

**POINT I**

**THE FACTUAL EVIDENCE IN THE RECORD DOES NOT ESTABLISH THE EXISTENCE OF A POLITICAL MOTIVE**

In opposing Defendants' argument that the facts in the record fail to establish an improper political motive, Plaintiff provides wholly conclusory assertions with no factual

---

[1] In opposition to Defendants' motion, Plaintiff responds to Defendants' Rule 56.1 statement with random or incorrect citation to the record. See, for example, responses to paragraphs 3,5,11,28,32 and 34. Plaintiff also provides a counterstatement with similar problematic citations. See, for example, paragraphs 2,3,4,5,6,7,19,50,70,86,107,136,140,142,151 and 159.

[2] To the extent that Plaintiff argues in her opposition that Defendants' Rule 56.1 statement is incomplete, it is respectfully submitted that the basis for Defendants' arguments were sufficiently set forth not only in their Rule 56.1 statement but also the accompanying supporting affidavits. For clarity, accompanying this memorandum is a supplemental Rule 56.1 statement.

1

support. Plaintiff premises her opposition on the assertion that "Neuhaus won the county executive race because of almost unanimous support from one community, Kiryas Joel." (Plaintiff Memorandum, p. 9). At the summary judgment stage, it is incumbent upon Plaintiff to show the existence of a genuine issue of fact **grounded on credible evidence** on which the jury could reasonably find for her. *Dawson v. County of Westchester,* 373 F.3d 265, 272 (2d Cir. 2004). Here, Plaintiff fails to adduce any such evidence to refute Defendants' supported contentions.

There are statements in the record from Plaintiff and her counsel relative to the general election of 2013 and the impact of votes purportedly cast by residents of the Village of Kiryas Joel. However, those statements, standing alone, cannot serve as a basis to defeat a summary judgment motion as they are not based upon personal knowledge. *See Kamen v. Am. Tel & Tel. Co,* 791 F.2d 1006, 1011 (2d Cir. 1986)(Rule 56(e) specifically requires that affidavits in summary judgment motion be based upon personal knowledge); *Isaacs v. Mid Am. Body & Equip. Co.,* 720 F.Supp. 255, 257 (E.D.N.Y. 1989)(an attorney's affidavit not made on his personal knowledge of the facts, but merely stating what he believes does not measure up to the requirements of Rule 56(e)). Plaintiff's counsel annexes to his affirmation a nineteen page computer printout purporting to be the official Orange County Board of Elections' election results for the general election in 2013. This printout is of no moment as, standing alone, it fails to support the contention that Mr. Neuhaus received 99% of the votes within the Village of Kiryas Joel or that Mr. Neuhaus would not have won the election but for the votes cast by the residents of Kiryas Joel. (See Exhibit "7" to Sussman Affirmation).

Initially, at no time prior to Plaintiff's opposition to Defendants' motion has Plaintiff disclosed this document and as such, this exhibit to counsel's affirmation should not be

considered.[3] Even if considered, Plaintiff has failed to establish the relevance of the printout. Nothing in the printout indicates the voting statistics of the Village of Kiryas Joel. Counsel's bare and conclusory assertion in his affirmation concerning the votes within the Village of Kiryas Joel, referring the reader to certain districts, having demonstrated no personal knowledge of electoral districts, is without evidentiary value and thus, unavailing. *See Isaacs, supra; Fed.R.Civ.P 56(e)*.

Additionally, though Plaintiff's counsel's affirmation annexes a purported election law case involving the Village of Kiryas Joel, this reference is puzzling. That matter involves alleged improper actions by the Commissioners (Democratic as well as Republican) of the Orange County Board of Elections relative to events on or about August of 2014.[4] Clearly those matters do not involve the 2013 general election for County Executive. Further, there is absolutely no reference to Mr. Neuhaus or either Defendant in the decision. Indeed, Plaintiff testified to the non-material, irrelevant nature of that case during her deposition dated June 14, 2016 where she testified that she did not know Ms. Convers, Ms. Behren or Mr. Green and in response to the question of what, if any relevant information these individuals possessed concerning her claims, she responded "nothing to my knowledge." (See Plaintiff EBT, Exhibit "C" to Defendants' motion, pp. 279-280).

Despite Plaintiff's testimony, her counsel presently argues that tapes of purported conversations with Ms. Behren and Mr. Green explain "that pressure from the county attorney, an appointee of the county executive, was preventing them from meeting the citizens requests" for appointing non-Satmar election inspectors from outside the Village of Kiryas Joel. This is

---

[3] See Fed.R.Civ.P. 26 and 37. Plaintiff provides no reason for her delay in disclosure. Further, the printout is not relevant to Plaintiff's claims.
[4] It should be noted that again, the state court's decision on the *Convers* matter was not disclosed to Defendants prior to Plaintiff's present submission.

3

patently false. The cavalier manner in which Plaintiff levies such serious (and meritless) allegations cannot and should not be condoned, especially in light of Plaintiff's complete failure in producing any evidence to support such claims. It is beyond cavil that unsworn statements cannot be considered in opposition to a summary judgment motion. *See Smeraldo v. City of Jamestown*, 512 Fed.Appx. 32, 34 (2d Cir.2013)(unsworn letters and statements made without personal knowledge are not admissible evidence and cannot be considered in connection with a summary judgment motion). Here, Plaintiff's claims rest on unsworn statements in transcripts that are annexed to counsel's affirmation and thus, cannot be considered. Moreover, it is quite telling that, upon information and belief, depositions of Ms. Convers and both election commissioners were conducted in the election law matter yet those transcripts were not provided by Plaintiff in support of her claims here. To the extent that this Court would consider the *Convers* matter in the present action, relevant portions of the deposition transcript of Gedalye Szegedin are provided. Mr. Szegedin is the Village Administrator of the Village of Kiryas Joel and testified that "[o]n the annexation I remember him [Neuhas] saying very vividly that he would oppose any potential annexation. That he would intervene in any court battles trying to stop annexation. That he would do all he can to make sure that Kiryas Joel property annexation never materializes, in general terms. Didn't quote any of his literature but that's what I remember generally." (See Exhibit "H" to Attorney Declaration in Reply, pp. 11-12). Further, Mr. Szegedin testified that Mr. Neuhaus was "floating the idea that Kiryas Joel shouldn't be having a water project that serves Kiryas Joel only, that he would encourage—that he would introduce legislation to condemn or take over the water project and make that into a county party project, things of that nature. Again, without being specific on details on what his literature

actually says, that was the general notion, general positions he took. (See Exhibit "I" to Attorney Declaration in Reply, pp. 11-12).

Not only has Plaintiff failed to establish the existence a political alliance between Mr. Neuhaus and the Village of Kiryas Joel, as reflected above, the evidence shows there is no such alliance. Plaintiff not only omits Mr. Szegdin's testimony but fails to address the affidavit of Meredith McGovern submitted in support of Defendants' motion. As referenced therein, Ms. McGovern noted Mr. Neuhaus' support for prosecution on matters involving fraud which included the prosecution of individuals within the Village of Kiryas Joel. The facts as reflected by the credible evidence in the record refutes the allegations contained in the AC, that there exists an improper political motive for Defendants' alleged actions.

## POINT II

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

As there is no factual evidence in the record that would allow a jury to conclude that any improper political motive existed for the actions taken by Defendants, the sole question remaining is whether Defendants could reasonably believe that they were permitted to discipline Plaintiff for improperly using a confidential database and disclosing confidential information to the FBI.

Though Plaintiff argues that "[i]t has long been established that supervisors may not retaliate against an employee for engaging in protected speech", this conclusion is inaccurate and stands in stark contrast to the Supreme Court's holding in *Lane v. Franks,* 134 S.Ct. 2369 (2014). In *Lane,* respondent argued, and the Court agreed, that even if plaintiff's speech was protected under the First Amendment, respondent was still entitled to qualified immunity.

Here, at the time of Defendants' decision to levy disciplinary charges against Plaintiff, the Court in *Harman v. The City of New York*, 140 F.3d 111, 119 (2d Cir. 1998) specifically noted that neither the plaintiff nor the public "has any public interest in releasing statutorily confidential information." Moreover, the court in *Kauskopf v. Gianelli*, 121 Misc.2d 186, 467 N.Y.S.2d 542 (Sup. Ct, New York County, Oct. 5, 1983), the precedential value to which Plaintiff concedes (see counterstatement, ¶ 5), determined that the section to which Plaintiff cites as providing a law enforcement exception, §357.3(e), did **not** sanction the unrestricted release of confidential DSS records.

In *Kauskopt*, the court noted that though the "Grand Jury is specifically included in the regulation as a properly constituted authority to whom even confidential information may be disclosed under **particularized criteria** (18 NYCRR 357.3(e))", *(emphasis added)*, it further went on to determine that though "[t]here is also no question that information revealed to a Grand Jury will maintain its confidential character, as mandated (18 NYCRR 357.3(a)(1)), and will not be used for commercial or political purposes (18 NYCRR 357.3(a)(3))…the third regulatory requirement for information release cannot here be assured, namely, that the purpose of the request for disclosure 'be reasonably related to the purposes of the public welfare program' (18 NYCRR 357.3(a)(2))." *Id.*[5]

Similar to *Kauskopf*, here, though § 357.3(e)(1) specifically includes "law enforcement" as a properly constituted authority to whom even confidential information may be disclosed under particularized criteria, there is no doubt in light of the factual evidence in the record, that Plaintiff does not satisfy the requirement that her disclosure was "reasonably related to the purposes of the public welfare program". Plaintiff alleges in the AC that she revealed the details

---

[5] It should be noted that the court in *Kauskopf, supra,* authorized disclosure under SSL § 136(1). However, as noted in Defendants' motion for summary judgment, that section is inapplicable to the present action as § 136(1) only authorizes the release of names and addresses of welfare recipients, not other information as here.

of **mortgage fraud** to her supervisor…and that she briefed the FBI on her findings relative to the mortgage fraud. (AC ¶¶ 10-14). It is indisputable that mortgage fraud is a crime associated with banking and/or financial institutions.

Plaintiff, for the first time, to circumvent the clear limitations of the exception noted in § 357.3, appears to argue that her disclosures related to public welfare fraud. This contention is belied by the documents she disclosed to the FBI as all the individuals without public assistance file numbers were not receiving welfare benefits. (See Exhibit "B" to Miller Aff.). As such, Plaintiff could not have been investigating them for welfare fraud. Moreover, if Plaintiff's present contention were true, then there is no question that Defendants' alleged conduct would be entitled to qualified immunity as it is uncontested that part of Plaintiff's job responsibilities included looking into welfare fraud; verifying a consumer's eligibility for public benefits. Indeed, Plaintiff testified that her job responsibilities included collecting information relative to potential welfare fraud and forwarding same for further investigation. (Plaintiff EBT, Exhibit "C" to Defendants' motion, pp. 51-53, p. 103). Thus, as her disclosures would then fall within her job responsibilities, they would not be protected under the First Amendment, therefore requiring the grant of qualified immunity to Defendants.[6] *See Garcetti v. Ceballos,* 126 S.Ct. 1951 (2006); *Lane, supra.*

Returning to Plaintiff's initial posture, that her investigation into mortgage fraud was not related to her job duties, in arguing against Defendants' entitlement to qualified immunity, Plaintiff argues the correctness of Defendants' interpretation of the confidentiality statutes but does not address the reasonableness of their judgment as it is well settled that qualified immunity

---

[6] Similarly, Plaintiff's contention that her disclosures were authorized by Dodd is equally unavailing. If Plaintiff is arguing that her supervisor authorized the release, then Plaintiff's position that her disclosure was outside the scope of her employment is untenable as she is relying on work related procedure and approval. Plaintiff is attempting to have it both ways.

7

is available to officials, even if they were ultimately mistaken in their judgment. *Lane,* 134 S.Ct. at 2381. In light of the existing authority at the time of Defendants purported actions as set forth above and the fact that there is no authority holding that the disclosure of confidential DSS records to the FBI for investigation into purported mortgage fraud was permitted, there can be no dispute that Defendants' belief, that Plaintiff impermissibly disclosed confidential DSS records, was reasonable such that they are entitled to qualified immunity.

## POINT III

### THE *PICKERING* BALANCING TEST WEIGHS IN DEFENDANTS' FAVOR

Next, Plaintiff argues that the balancing test set forth in *Pickering* weighs in her favor because Defendants' arguments are remarkably conclusory and speculative whereas she was involved with the very important task of "extirpating fraud and corruption." However, an employer is never required "to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Connick v. Myers,* 103 S.Ct. 1684, 1693 (1983). Though Plaintiff argues that Defendants' reference to the LCMs and the possible termination of critical data exchanges is speculative, it is well settled that the state does not need to show "actual disruption." *Knight v. Connecticut Dept. of Public Health*, 275 F.3d 156, 164 (2d Cir., 2001) *quoting Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir., 1999). In this instance, as set forth in Defendant Miller's affidavit, she attempted to stay in compliance with OTDA requirements and to ensure the continued cooperative working with OTDA by taking the action that she did. (Miller Aff., ¶ 16). Through her actions, Miller evidenced DSS' commitment to OTDA's stated purpose of strict confidentiality of its records maintained in their database.

8

In contrast to the stated interests of DSS, Plaintiff defers to her conclusory assertion that her interests were more significant, that of exposing waste and fraud. However, in balancing the competing interests of the employee and employer, the statement at issue will "not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPheson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899 (1987); *Connick,* 103 S.Ct. at 1692-93. In the *Pickering* balancing test, one of the factors to be considered is the manner in which Plaintiff's speech touches on matters of significant public concern. *Lewis v. Cowen,* 165 F.3d 154, 162 (2d Cir., 1999). Here, it is undisputed and Plaintiff conveniently omits that the information she provided to the FBI never resulted in any arrest or discovery of waste or fraud. Though Plaintiff asserts that the information she provided was of significant public concern, aside from her conclusory statements attesting to same, there is no factual evidence in the record supporting this position. What the facts do reflect, however, is that Plaintiff took names of random individuals within one religiously-based community and ran unauthorized searches of these individuals within a confidential database. It cannot be lost on this Court that names of individuals who were not receiving welfare benefits and therefore, should not have been searched in the WMS system, were in fact searched by Plaintiff, simply because they resided within the Village of Kiryas Joel-impermissible profiling. Permitting a government employee to run unauthorized searches of individuals within a confidential database without justified probable or reasonable cause is government run afoul. Plaintiff attempts to shield herself with the wholly unsupported contention that she uncovered $40 million dollars in mortgage fraud. It is ironic that she argues that her constitutional rights were violated when she used her position to impermissibly access a confidential database and in the process violated numerous regulations and the rights of individuals who had not been adjudicated guilty of any

9

crime. Further, this was not a situation where the FBI requested assistance in an investigation that presumably had some merit. Plaintiff can pat herself on her back for a perceived job well done but the judicial system should not and cannot condone such cavalier abuse of regulations, especially in light of the complete lack of evidence to support the necessity or the authority to do so.

Plaintiff further argues that Defendants' contentions concerning SIU are not predicated on the record because SIU was not doing its job. This position, however, is contradicted by Plaintiff's testimony. She testified that "I referred it to—I wrote up an SIU report and referred it to them, and I believe with those I believe so far five people have been arrested." (Plaintiff's EBT, Exhibit "C", p. 103). Contrary to Plaintiff's opinion, the factual evidence shows that SIU was in fact, doing their job.

## POINT IV

## PLAINTIFF FAILS TO ESTABLISH HER RETALIATION CLAIMS

In opposition to Defendants' arguments, Plaintiff has not produced a shred of evidence to establish any personal involvement by the named Defendants relative to her claims concerning the promotional opportunity. Likewise, Plaintiff offers no evidence to establish any personal involvement by Gross in her transfer to Valley View and failed to refute Miller's proffered reason for her transfer-that Plaintiff requested to be moved out of the main DSS office, which was supported by Plaintiff's email to her Administrator. (Miller Aff., ¶ 29). As to Plaintiff's assertion in her memorandum in opposition that "Defendants concede that Miller and Gross, as personnel director, were integrally involved in both adverse actions...", the origin of this statement is baffling as it is inaccurate and not supported by citation to any evidence. Further, it

is wholly contradicted by the testimony of both Defendants and the sworn affidavits of Miller, Gross and Ms. Hendrick, submitted in support of Defendants' motion for summary judgment.

## CONCLUSION

For all of the foregoing reasons together with the essential facts of this matter, Defendants' motion for summary judgment should be granted, dismissing the Amended Complaint.

Dated: October 11, 2016
       Goshen, New York

_____
HYUN CHIN KIM (HK9591)
Chief Assistant County Attorney/Litigation
LANGDON C. CHAPMAN
County Attorney for Orange County
Attorney for Defendants
Steve Gross and Darcie Miller
15 Matthews St., Suite 305
Goshen, NY 10924
(845) 291-3150